## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **RALPH DAVID HATHAWAY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-3124** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is Petitioner Ralph David Hathaway's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 (d/e 5) and his Supplement (d/e 8) thereto. As directed, the Government filed a Response (d/e 28) to the Motion. Because the record establishes that Petitioner is unable to establish prejudice or deficient performance by counsel, the Court concludes that an evidentiary hearing under Rule 8 is not warranted and the § 2255 Motion is Denied.

## BACKGROUND AND PROCEDURAL HISTORY

On August 6, 2015, a grand jury returned an Indictment charging the Petitioner with one count of knowingly transporting a minor across state lines to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and two counts of traveling between two states to do the same, in violation of 18 U.S.C. § 2423(b)).  See Case No. 15-CR-30035, Doc. 4.

On September 20, 2016, a jury found Petitioner guilty of all three counts in the Indictment.  See id., September 30, 2016, Minute Entry.  On April 13, 2017, United States District Judge Richard Mills sentenced Petitioner to an aggregate term of 400 months' imprisonment.  See id., Doc. 147.  The Seventh Circuit affirmed the judgment on direct appeal.  See United States v. Hathaway, 882 F.3d 638 (7th Cir. 2018).  The Seventh Circuit's Opinion and final judgment issued on February 12, 2018.  See CA 7 Case No. 17-1823, d/e 32.  The Petitioner did not file a petition for certiorari with the United States Supreme Court.

On May 9, 2019, the Petitioner filed a Motion to File Excess Pages on a Petition under 28 U.S.C. § 2255.  See Doc. 1.  On May 10, 2019, the Petitioner filed a pleading entitled "Memorandum in

2

Support of Petition under 28 U.S.C. § 2255." <u>See</u> Doc. 5.  In that pleading, the Petitioner raised several allegations relating to ineffective assistance of counsel, in addition to a claim that there was no venue for prosecution, and an assertion that Petitioner's speedy trial rights were violated.  <u>Id</u>. at 6-7.  On July 8, 2019, the Petitioner filed a pleading entitled "Mmotion [sic] for Status on Petitioner's 2255, Restitution Over-Payment, and Following of Local Rules advised by Clerk of the Court," <u>see</u> Doc. 8, in which he raises more issues related to ineffective assistance of counsel.  The Court ordered the Clerk to terminate that motion and "docket it as a supplement to his motion to vacate under 2255, as it contains argument on the Petitioner's ineffective assistance of counsel claims." <u>See</u> Text Order, 7/26/19.

## EVIDENCE AT TRIAL

At trial, the minor victim testified about the Petitioner's history of sexual conduct toward her, in addition to Petitioner's knowledge of her age.  While the Petitioner admitted to much of the underlying conduct, Petitioner claimed he believed the minor victim was 18.  The jury rejected Petitioner's defense in finding him guilty of each count.

<u>Testimony of minor victim</u>

3

The minor victim testified that she met the Petitioner over the Internet.  Tr. 536.  The Petitioner first traveled from Illinois to South Carolina to see her in June of 2013.  Tr. 538-39.  The minor victim testified that the first time they met, the Petitioner suggested that he perform anal sex on the minor victim.  Tr. 542.  The minor victim "kind of agreed," and Petitioner did have anal intercourse with her.  Id.  The next day, the Petitioner picked up the minor victim at her home, took her to a hotel, and had vaginal intercourse with her.  Tr. 543-45.  The events of this trip were not charged in the Indictment.

The minor victim testified that after the June 2013 visit, the Petitioner and the minor victim continued to communicate over the Internet and the Petitioner proposed marriage.  Tr. 546.  The Petitioner again traveled to South Carolina to see the minor victim in August 2013.  Tr. 549.  On this trip, the Petitioner towed a camper and parked it in the woods by the minor victim's home.  Tr. 549.  When the minor victim first walked through the woods to meet the Petitioner, he got down on one knee and proposed marriage in person.  Id.  The minor victim was happy, but also felt guilty, because she had told the Petitioner she was 18 years old.  Tr. 550.  At that point, the minor victim "broke down" and told the Petitioner her

actual age—13—because she "didn't want to marry someone because of a lie."  Id.  After hearing this "confession," the Petitioner did not drive back to Illinois; instead, the minor victim testified he stayed in South Carolina for several more days and had intercourse with the minor victim seven times.  Tr. 551-52.  The events of the August 2013 trip were not charged in the Indictment.

The minor victim testified that, after the Petitioner left in August 2013, she considered them to be "engaged."  Tr. 554.  In October 2013, one month after the minor victim turned 14, the Petitioner again traveled to South Carolina.  Tr. 555-56.  The Petitioner stayed in a hotel and visited the minor victim in her home while her father was not home.  Tr. 556-58.  The minor victim testified that Petitioner had intercourse with her three to six times during this visit.  Tr. 560.  The Petitioner did not use a condom; he and the minor victim discussed the possibility of her becoming pregnant, including naming a child after the minor victim's deceased mother.  Tr. 560-61.  The events making up the October 2013 trip were charged as Count Two in the Indictment.

The minor victim testified she next saw the Petitioner in April 2014, when he drove from Illinois to South Carolina and stayed in a

hotel.  Tr. 562.  The minor victim would go to school, then the Petitioner would pick her up on a dirt road close to her home and bring her to the hotel; later, the Petitioner would pick the minor victim up after her father went to bed for the night.  Tr. 563-65.  The Petitioner stayed in South Carolina several days; the minor victim estimated that, in addition to other sexual conduct, the Petitioner had intercourse with her on three to six occasions.  Tr. 564-65.  The events making up the April 2014 trip were charged as Count Three in the Indictment.

The minor victim testified that in May 2014, her sister told her that one of them had to tell their father about the Petitioner.  Tr. 569.  The minor victim did tell her father.  Id.  The Petitioner came to the minor victim's home in July 2014 to speak with her father but left soon after arriving.[1]  Tr. 570.

The minor victim testified that, following the July 2014 incident, the Petitioner did not speak regularly with her until after her 15th birthday in September 2014.  Tr. 570-71.  In January 2015, they

---

[1] The minor victim's father, Don Hargat, testified that his daughter informed him that Petitioner was coming to their home to speak with him about their relationship.  Tr. 221.  When the Petitioner arrived at the home and started to get out of his vehicle, Mr. Hargat confronted the Petitioner and told him to leave immediately which the Petitioner did, and Mr. Hargat called the police.  Tr. 221-22.

started "planning to meet and kind of run away together." Tr. 571. The minor victim testified, "he was going to get a camper and get some land, and, you know, we were gonna live in the camper." Tr. 573. The plan began to develop in the late hours of June 5 and early morning hours of June 6, 2015, when the Petitioner picked up the minor victim in South Carolina to bring her to his camper in Missouri. Tr. 575. The Petitioner had moved his camper to that location from New Canton, Illinois several days earlier, pursuant to the plan. Id.

The minor victim testified that, on the ride from South Carolina to Missouri, she "did oral" to the Petitioner, and he touched her. Tr. 580. Within 15 to 30 minutes of arriving to his camper in Missouri, the Petitioner had vaginal and anal intercourse with the minor victim. Tr. 581. They then drove to the Petitioner's family home in New Canton, Illinois. Tr. 581-82. Soon thereafter, police came to the home, removed the minor victim, and arrested the Petitioner. Tr. 584-85. The events occurring during the June 2015 trip were charged as Count One in the Indictment.

Evidence corroborating minor victim's testimony

The Petitioner did not dispute a significant portion of the minor victim's testimony.  Some of the minor victim's testimony as it related to the history of the Petitioner's relationship with her was corroborated by independent evidence, including documentary evidence and other witnesses.  This likely was a reason the jury ultimately found the minor victim to be credible.

For example, Government witness Tarah Brown, Forensic Examiner for the FBI, testified that the minor victim and her clothing were tested for DNA on June 10, 2015.  Tr. 389.  The analysis determined that (1) there was strong support that DNA collected from vaginal swabs of the minor victim was from the Petitioner; and (2) there was extremely strong support that DNA collected from the minor victim's underwear was from the Petitioner.  Tr. 398, 400-01.

Additionally, the Government presented financial records of the Petitioner that corroborated the minor victim's testimony regarding the timeline of the Petitioner's visits.  The records showed transactions in Conway, South Carolina during the time frames the minor victim testified the Petitioner was there.  Tr. 625-26.  Charges included the Best Western and Days Inn hotels, in addition to area

restaurants (Tr. 624-26), which further corroborated the minor victim's testimony.

The Government presented the testimony of Geri Archibald, clinical coordinator at the Keller Center for Family Violence Intervention, in San Mateo, California.  Tr. 344.  Ms. Archibald performed a forensic sexual exam on the minor victim soon after police removed her from the Petitioner's custody in June 2015.  Tr. 348-49.  During this examination, the minor victim provided details of the June 2015 intercourse with the Petitioner that were consistent with the minor victim's testimony at trial. Tr. 351-53.  Ms. Archibald also found that the minor victim had a tear in her posterior fourchette, which is consistent with intercourse.  Tr. 357-58.

After the police removed the minor victim from the Petitioner's custody, she went to live with her uncle, Jason Lappano, who testified at trial.  Mr. Lappano had numerous recorded phone calls with the Petitioner.  Tr. 436-37.  In these calls, they discussed the Petitioner's past sexual relationship with the minor victim, including that he had sex with her in June 2015.[2]

---

[2] Excerpts of these calls were published to the jury at trial, and jurors were provided transcripts.  The recordings of calls were admitted as Government Exhibits 13A (two calls from June 17, 2015) and 14A (one call from June 22, 2015).  Tr. 436.  The

Additionally, the Government presented evidence of email and social media communication between the Petitioner and the minor victim in which the Petitioner expressed that he was in love with the minor victim and intended to have children with her.  Tr. 635-38.

The Government also presented evidence of two interviews conducted of the Petitioner by law enforcement.  In one interview, the Petitioner lied and told the Pike County Sheriff's Deputy that he never had sex with the minor victim.  Tr. 733.  In another interview, the Petitioner admitted to FBI agents that he had been "intimate" with the minor victim, which he later clarified as meaning that he had intercourse with her.[3]

<u>Testimony of the Petitioner</u>

---

transcripts of the ten excerpts published to the jury were offered as Government Exhibits 13B1, 13B2, 13B4, 13B5, 13B6, 13B7, 13B8, 13B9, 13B10, and 13B12.  Tr. 439-42.  None of these transcripts were admitted as evidence at trial.  Therefore, the transcripts are aggregated and included as Exhibit 1B to the Government's Response [Doc. 28] to Petitioner's Motion.  Attached as Exhibit 1A to the Response is an affidavit from counsel that the transcripts represent the excerpts of the interviews published to the jury at trial.

[3] Excerpts of the interviews were published to the jury at trial, and jurors were provided transcripts.  The Pike County interview was admitted as Government Exhibit 4A.  The transcripts of the three excerpts published to the jury were offered as Government Exhibits 4B1, 4B2, and 4B3.  Similarly, the audio recording of the FBI interview was admitted as Government Exhibit 31A, and the transcripts of the six excerpts published to the jury were offered as Government Exhibits 31B1, 31B2, 31B3, 31B5, 31B6, and 31B8.  Tr. 644. None of these excerpts was admitted as evidence at trial.  Therefore, the transcripts are aggregated and included as Exhibits 1C and 1D, respectively, to the Government's Response [Doc. 28] to Petitioner's Motion.  Attached as Exhibit 1A to the Response is an affidavit from counsel that the transcripts represent the excerpts of the interviews played for the jury at trial.

The Petitioner also testified at trial.  Much of the Petitioner's testimony corroborated the minor victim's testimony.  The Petitioner corroborated the minor victim's timeline and freely admitted to having sexual intercourse with the minor victim.  Specifically, the Petitioner acknowledged driving from Illinois to South Carolina in June 2013 and having vaginal intercourse with the minor victim.  Tr. 694-96.  He testified that he drove to South Carolina again in August 2013 to "check on" the minor victim but told the jury that nothing significant happened on that visit.  Tr. 697-701.  The Petitioner acknowledged that he drove his camper to South Carolina in October 2013 and parked it in a wooded area by the minor victim's home.  Tr. 701-03.  He stated that it was this trip that he proposed marriage to the minor victim.  Tr. 704.  The Petitioner also admitted that he drove to South Carolina to visit the minor victim in June 2014.  Tr. 703. Finally, the Petitioner admitted that he drove to South Carolina in June 2015 and transported the minor victim from there to Missouri. Tr. 713-18.

While the minor victim was only 13-years old when she met the Petitioner, the Petitioner claimed that he believed her when she told him she was 18.  Tr. 692-93.  The Petitioner claimed that the minor

victim's "confession" of her true age occurred in October 2013, Tr. 706, and he asserted that he did not have sexual intercourse with her after "finding out" her actual age.

The Petitioner testified that, at the outset of his relationship with the minor victim, she informed him that she was a virgin. Tr. 732. He also discussed this with Mr. Lappano. Tr. 441, 732. However, the Petitioner claimed that when he drove to South Carolina to see her in June 2013, the minor victim initiated anal intercourse during their first encounter, and she initiated vaginal intercourse during their second encounter the following day. Tr. 696, 733. The Petitioner also claimed that, after he picked her up in June of 2015, he rebuffed her numerous attempts to engage him in sexual conduct, but that the minor victim did make him ejaculate—against his will—and then cleaned it up with her underwear. Tr. 719-22. This was an apparent attempt to explain to the jury why the Petitioner's DNA would be on her underwear.

The Petitioner's claim that he did not have intercourse with the minor victim in June 2015 is inconsistent with his DNA being found on the minor victim's vaginal swabs and her underwear on June 10, 2015, in addition to his recorded statements to Mr. Lappano. While

the Petitioner claimed that he believed the minor victim was a college student and told the jury that the minor victim showed him an ID supporting that assertion, this detail was not mentioned in either interview he gave to law enforcement.  Tr. 693, 700.  The Government also presented evidence that the minor victim informed the Petitioner of her true age in August 2013 (as she testified), not in October 2013 (as the Petitioner testified).  Specifically, in one of many social media searches the Petitioner conducted related to the minor victim, he entered a search for "Blackwater Middle School"—the minor victim's middle school—on August 13, 2013.  Tr. 526, 536.

Based on the foregoing, the jury rejected the Petitioner's testimony on the issue of the minor victim's age.   Some of the Petitioner's testimony had no basis in reason, logic or human experience.  The Petitioner's primary defense—that he did not know the minor victim was under 18 until October 2013 and did not engage in sexual conduct with her thereafter—was contradicted by extensive amounts of independent evidence.  The jury had ample reason to reject the Petitioner's testimony.

## PETITIONER'S SECTION 2255 CLAIMS

The Petitioner has asserted several claims under § 2255. Most of the claims are alleged as ineffective assistance of counsel, under the theory that trial counsel should have raised various issues. Some of the claims relate to issues the Petitioner alleges should have been raised by counsel at or prior to trial. Regarding evidence-related claims, the Petitioner asserts his counsel were deficient for the following reasons: (i) they failed to challenge the Petitioner's recorded statement to the Pike County Sheriff as involuntary because Petitioner claims he was severely intoxicated; (ii) they failed to challenge a search of the Petitioner's home, and the search affected the integrity of the evidence's chain of custody; and (iii) they failed to conduct a sufficient investigation.

The Petitioner also raises several claims of ineffective assistance of counsel that relate to alleged deficiencies in process, procedure, and challenging the underlying Indictment. Specifically, the Petitioner alleges his counsel were deficient for the following reasons: (i) they failed to challenge one of the statutes in the Indictment as unconstitutional; (ii) they failed to challenge venue; (iii) they failed to challenge timeliness of the Petitioner's Rule 5 hearing; (iv) they failed to raise a speedy trial challenge; (v) they did not properly

14

communicate critical factors with Petitioner during plea discussions; (vi) they did not challenge the Petitioner's competency to stand trial; and (vii) they did not provide discovery to the Petitioner while he was in jail.

Since the Court's Order directing the Government to respond, the Petitioner has filed several other pleadings. These include Petitioner's "Motion Under Rule 6 of 28 U.S.C. § 2255 for: Court Permission for Discovery Under § 26 and § 36" (Doc. 11); "28 U.S.C. § 1361 Motion to Compel Under 28 U.S.C. § 2241" (Doc. 12); "Supplemental Motion in Addition to Typed Supplemental to the Original 28 U.S.C. Brief" (Doc. 14); "Motion in Opposition to the Respondent(s) Motion for Extension of Time" (Doc. 15); "Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255" (Doc. 16); "Supplemental Motion to the Original 28 U.S.C. § 2255 Brief of the Petitioner" (Doc. 17); Motion Under Rule § 56 Under Rule § 36 Support" (Doc. 18); "Motion for Stipulation" (Doc. 19); "Motion for Judicial Notice and Entitled Hearing under Federal Rules of Evidence § 201(c)(2) and § 201(e)" (Doc. 20); "Motion for Judicial Notice and Entitled Hearing Under Federal Rules of Evidence § 201(c)(2) and § 201(e)" (Doc. 21); "Emergency Expedited Motion for

Release Pending Appeal" (Doc. 23); "Subpoena Duces Tecum (Fed. R. Civ. P. § 45(a))" (Doc. 24); "Motion in Opposition to (Default) Extension of Time for the Response Brief" (Doc. 25); "Motion for Default Under Federal Rules of Civil Procedure, § 55" (Doc. 26); "Motion for leave to Add an Addendum to Petitioner's Pending 28 U.S.C. § 2255" (Doc. 27); "Motion to Strike the Brief of the respondent for Failure to Obey the Local Rules" (Doc. 30); "Reply to the United States' Answer to Movant's 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence" (Doc. 32); "Affidavit of: Ralph David Hathaway" (Doc. 33); "Petitioner's Supplemental Reply to his Initial Reply to the Government's Response to Petitioner's Section 2255" (Doc. 35); "Memorandum Brief in Support of Motion for Discovery and Production of Documents pursuant to Rule 6 Governing 28 U.S.C. § 2255" (Doc. 36); "Memorandum and Brief in Support of Motion for an Evidentiary Hearing on 28 U.S.C. Section 2255 Motion" (Doc. 37); "Motion for Leave to Supplement Petitioner's 28 U.S.C. Section 2255 Motion Based Upon New Authority" (Doc. 38); "Motion for Cause of Delay and Status of All Documents" (Doc. 39); "Motion to Objection to Appearance of New Counsel on Behalf of the United States of America" (Doc. 41); "Motion to Reconsider Based Upon New

Authority" (Doc. 43); "Reply to Government's Response in Opposition to Petitioner's Motion to Reconsider" (Doc. 45); "Motion for Leave to Supplement Petitioner's 28 U.S.C. Section 2255 Motion Based upon New Authority and Case law" (Doc. 46); and "Motion for Judgment" (Doc. 48). In most of these pleadings, the Petitioner simply rehashes his claims as presented in the two original pleadings the Court characterized as his § 2255 challenge.

## DISCUSSION

### Timeliness

In order to be timely, a petitioner must file a § 2255 motion within one year of the date the conviction became final. <u>See</u> 28 U.S.C. § 2255(f). If a defendant appeals his conviction, as the Petitioner did, his conviction becomes final upon the denial of a petition for certiorari or the expiration of the period in which a petition for certiorari could have been filed—in this case, the Petitioner's conviction became final when the 90-day period for filing a petition for a writ of certiorari with the Supreme Court following the Seventh Circuit's affirmance expired. <u>See</u> <u>Clay v. United States</u>, 537 U.S. 522, 532 (2003); S. Ct. Rule 13 (a petition for writ of certiorari must be filed within 90 days after entry of the judgment or the denial of

17

rehearing).  Because the Seventh Circuit issued its final judgment on February 12, 2018, his conviction became final on May 14, 2018. Accordingly, the limitations period in which to challenge his conviction via § 2255 expired on May 14, 2019.

To comply with the limitations period, an untimely § 2255 motion must "relate back" to the original motion under Federal Rule of Civil Procedure 15(c).  See Rodriguez v. United States, 286 F.3d 972, 981 (7th Cir. 2002).  In Rodriguez, the Seventh Circuit cited other circuits that have addressed the issue and held that "in order for an untimely claim to relate back, it must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type."  Id. (citing Dean v. United States, 278 F.3d 1218, 1221 (11th Cir. 2002)) (internal quotations omitted).  The Supreme Court has interpreted that standard as allowing relation back only when the new claims are based on the "same core facts" as the timely claims; a late amendment is not allowed if the new claims "depend upon events separate in 'both time and type' from the originally raised episodes." Mayle v. Felix, 545 U.S. 644, 657 (2004).  If the relation-back standard were defined more broadly to allow amendments simply

18

because they relate to the same trial, conviction, or sentence as a timely claim, the limitations period would have little significance. See id. at 662. This strict timeline is consistent with the goal of advancing the finality of convictions. See id.

Based on the foregoing, any of the Petitioner's pleadings after May 14, 2019, that raise additional issues outside the scope of his two original pleadings (Docs. 5 and 8) are time-barred under 28 U.S.C. § 2255(f).

Ineffective assistance of counsel standard

A motion under § 2255 to vacate, set aside, or correct a sentence may be brought by a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.

"[T]o prove ineffective assistance of counsel, [a petitioner] must show that his attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Kirklin v. United States, 883 F.3d 993, 996 (7th Cir. 2018) (citing Strickland v. Washington, 466 U.S. 668,

688 (1984)).   The presumption is that counsel advised his client
effectively.   See Hutchings v. United States, 618 F.3d 693, 696-97
(7th Cir. 2010).   "Only if the petitioner comes forward with specific
acts or omissions of his counsel that constitute ineffective assistance
will we then consider whether these acts or omissions were made
outside the wide range of professionally competent assistance."   Id.
at 697 (internal quotation marks omitted).

The Seventh Circuit has noted the Supreme Court stated in
Strickland that "a court need not determine whether counsel's
performance was deficient before examining the prejudice suffered by
the defendant as a result of the alleged deficiencies," and concluded
that if an ineffective assistance of counsel claim may be resolved
because of a lack of prejudice, "that course should be followed."   See
United States v. Birk, 453 F.3d 893, 898-99 (7th Cir. 2006) (citing
Strickland, 466 U.S. at 697).   "This court has consistently followed
the Supreme Court's mandate in Strickland, first examining whether
the petitioner has established prejudice and then, if necessary,
examining whether counsel's performance fell outside the
parameters of what could objectively be considered 'professionally
competent.'"   Taylor v. Bradley, 448 F.3d 942, 949 (7th Cir. 2006).

20

Prejudice is only established if it deprives the defendant of a fair trial to such an extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 950 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

A trial counsel's deficient performance does not prejudice the defendant if those errors had "some conceivable effect" on the outcome of the trial. Sullivan v. Fairman, 819 F.2d 1382, 1391 (7th Cir. 1987) (citing Strickland, 466 U.S. at 693). If, as in this case, the evidence of guilt is overwhelming, the habeas petitioner must clear a higher bar to establish prejudice. See e.g., Bieghler v. McBride, 389 F.3d 701, 707 (7th Cir. 2004) (ineffective assistance of trial counsel did not prejudice defendant in light of overwhelming evidence pointing to his guilt); Lieberman v. Washington, 128 F.3d 1085, 1096 (7th Cir. 1997) (same).

## A. **Counsel's Alleged Failure to Raise Certain Evidentiary Challenges**

### (1) Claim of Involuntary Statement

The Petitioner now alleges that the statement he provided to police after he was initially arrested on June 6, 2015, should not have been admitted because he was intoxicated and that his counsel was ineffective for failing to raise that issue.   Doc. 5, Pt. 5, at 9. Specifically, the Petitioner claims he took "two Oxycodone pills, washed down with a glass of scotch prior to the police arrival by mere minutes." Id.

Even if the allegations are true, the Petitioner cannot establish prejudice due to counsel's failure to move to suppress the interview. In the interview, the Petitioner discussed with Pike County Deputy David Greenwood how it came to be that the minor victim was with him.  Specifically, the Petitioner stated that he picked her up in South Carolina the previous day, and they had been planning it for several days.  Tr. 273.  This is consistent with the Petitioner's testimony at trial and other evidence presented.  The Petitioner further stated that he had a "physical" relationship with the minor victim, describing it as "giving her a hug, a peck on the cheek, as he would his son or daughter." Tr. 274.  He denied having intercourse with the minor victim.   Id.   Even assuming that Petitioner's statements were involuntary due to intoxication, the suppression of the interview

would not have affected the trial.  Therefore, the Petitioner cannot establish prejudice.

Certain details making up this claim are demonstrably false. The Petitioner alleges that while he advised the police of his level of intoxication, they took his statement anyway; he further claims he was handcuffed for the entirety of the interview.  Doc. 5, Pt. 5, at 9-10.  Both of those statements are disproven by the videotape of the interview that was introduced at trial.  <u>See</u> Case No. 15-CR-30035, Gov. Trial Ex. 4A.

Additionally, the evidence at trial—including the Petitioner's trial testimony—establishes that he was not intoxicated.  During the extensive interview, the Petitioner provided thorough and responsive answers to the interviewer's questions.  The Petitioner never previously raised the issue himself despite multiple opportunities—at trial and at a pretrial motion hearing in which he also testified about the Pike County interview.  <u>See</u> Case No. 15-30035, Doc. 102, at 3-33; Tr. 688-748.  At trial, the Petitioner testified that any untrue statements he made were because he was exhausted.  Tr. 733-34, 745.  The Petitioner did not mention he was intoxicated during the

Pike County interview either time he was questioned under oath about it.

In addition to Petitioner's claim failing to establish prejudice, it was sound strategy for counsel not to advance this claim at trial. Because the claim contradicts evidence at trial, including the Petitioner's own testimony, counsel would have risked losing credibility with the jury and Court by pursing this claim. Accordingly, the Petitioner's attorneys were not ineffective for failing to assert this clam.

(2) Claims Concerning Illegal Search and Chain of Custody

The Petitioner next alleges there was an illegal search of his property, and that the search led to taints in chain of custody evidence. He invokes the "third-party seizure doctrine," but does not explain what he means. Doc. 5, Pt.4, at 5. The Petitioner distinguishes between state and federal law enforcement officers and appears to argue that, because he was eventually charged with federal crimes and not state crimes, it should have been federal officers and not state officers executing searches for any evidence. Doc. 5, Pt. 4, at 6. To the extent that Petitioner alleges this as a claim under § 2255, no such principle of law exists. Accordingly, the

Petitioner could not have been prejudiced by counsel's failure to raise the issue.

The Petitioner further claims that counsel was ineffective for failing to challenge the warrantless search and seizure of his residence.  Doc. 8, at 12.  The Petitioner does not identify the evidence or explain why it causes prejudice.  The Government notes that, after law enforcement intervened on June 6, 2015, and removed the minor victim from the Petitioner's custody, law enforcement went back to the Petitioner's property on June 10 to gather the minor victim's belongings, to send them to California where the minor was living with her uncle.  Tr. 287.  The Petitioner provided the minor victim's belongings to police and then provided a written consent for the officers to search his property.  Id.  None of these items were presented as exhibits at trial.  Even if the search were improper, therefore, it could not have caused prejudice.  Id.

The Petitioner goes on to allege that the improper search or "third party seizures" created issues regarding chain of custody of evidence that counsel should have raised at trial.  Doc. 5, Pt. 4, AT 7.  The Petitioner does not elaborate on this claim.  While he states that "[p]olice evidence procedure was not obeyed, the items were

handled by the officer without gloves, without evidence bagging, and without an official witness to their collection," see id., the Petitioner does not say how raising these issues would have helped him at trial. Given the fact that the items referenced were not presented as exhibits, the failure to raise this issue could not possibly have caused prejudice to the Petitioner.

In addition to his failure to establish prejudice, the Petitioner is unable to show his attorneys were ineffective for failing to raise these claims. The "third-party seizure" doctrine cited by the Petitioner does not exist in law. Because the Petitioner consented in writing to the search, moreover, he does not have a viable claim relating to chain of custody. Counsel had numerous reasons to elect to refrain from making these claims. Therefore, counsel was not ineffective for failing to pursue this claim.

(3) Claim that Counsel Failed to Conduct Sufficient Investigation

The Petitioner next alleges that his counsel failed to properly investigate certain claims, including what he alleges is potentially exculpatory evidence which likely would have changed the result of the trial. Doc. 8, at 15. The Petitioner identifies several issues that he asserts should have been investigated by counsel, including: (1)

26

the minor victim's sexual history; (2) the minor victim's father and his background; (3) the minor victim's uncle and his background; (4) the child advocacy representative; (5) the minor victim's past use of internet dating websites and her common practices of misleading individuals; (6) the minor victim's possible online portrayals as a college student; (7) the search and seizure procedures used at the Petitioner's property; and (8) the statements police officials made to Petitioner's family members.

The Petitioner does not elaborate on these claims or state how investigation by counsel would have helped him.  Some of the issues identified by the Petitioner are not relevant to the charges.  Some of the issues relating to the minor victim—in addition to being irrelevant—would be excluded by Federal Rule of Evidence 412, which generally prohibits admission of evidence of a victim's sexual behavior or predisposition in sex offense cases.  Even if such evidence were admissible, counsel may have reasonably determined that blaming the victim would not have been good trial strategy.  In any event, the Petitioner's claims are undeveloped and insufficient to allege an ineffective assistance of counsel claim.  See United States

v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("self-serving speculation will not sustain an ineffective assistance claim").

The Petitioner has submitted with his pleadings several affidavits, most of which are irrelevant to the issues he claims counsel should investigate. See Doc. 5, Pt. 1, at 30-31; Doc. 5, Pt. 2, at 1-24; Doc. 5, Pt. 3, at 1, 6-26; Doc. 5, Pt. 4, at 1-4. The Petitioner is the affiant for 26 of the 50 pages of affidavits that were submitted. None of these affidavits support the allegation that his counsel was deficient for failing to investigate his claims.

Some of the affidavits also describe the Petitioner's interactions with his own Defense counsel and their investigators. See Doc. 5, Pt. 1, at 30-31; Doc. 5, Pt. 2, at 15-16, 18-24; Pt. 3, at 1. In these affidavits, the Petitioner is critical of counsel, describing various counsel as combative with him, disrespectful to his requests, and not helpful to the Defense. However, the Petitioner does not indicate what evidence would have revealed if his attorneys would have done what Petitioner requested or explained how it would have resulted in a different outcome at trial.

Two affidavits reference electronic evidence that Petitioner claims exists but was not part of the Defense. See Doc. 5, Pt. 2, at

3, 17.  Although this issue was litigated prior to trial,[4] the Petitioner does not include missing evidence in the enumerated list of what his attorneys should have investigated on his behalf.  Accordingly, the Petitioner is entitled to no relief on any claim regarding this alleged missing evidence.

The Petitioner has also submitted affidavits signed by members of his family including his wife, daughter, two sons, and a friend of one of his sons.  See Doc. 5, Pt. 3, at 6-26, Pt. 4, at 1-2.  None of these affidavits explain what additional investigation would reveal and how that would have helped him or caused a different outcome at trial.  The Petitioner does not say how any of the claims that he wished to be investigated would have undermined the verdict which was supported by overwhelming evidence.  Because the Petitioner is unable to establish prejudice regarding the evidence-related issues, this claim fails.

## B.  Counsel's Alleged Failure to Raise Procedural Challenges

---

[4] Specifically, the Petitioner filed a motion to dismiss the Indictment due to missing evidence that he claimed would exonerate him.  See Case No. 15-CR-30035, d/e 62.  The Government responded, d/e 72, and a hearing was held on the matter.   See Case No. 15-CR-30035, d/e October 17 and 18, 2016.  The Court issued an Order (d/e 73) denying the Petitioner's motion.

The Petitioner next contends counsel was ineffective for failing to raise certain challenges to process, procedure, and the underlying Indictment.

### (1) Claim of Unconstitutional Statute

The Petitioner alleges that a Missouri statute referenced in Count I of the Indictment is unconstitutionally vague.  Doc. 5, at 8. The Indictment alleges that Petitioner:

> did knowingly transport an individual, L.H., who had not attained the age of 18 years, in interstate commerce, from the state of South Carolina, with the intent that such individual engage in sexual activity in Missouri for which any person can be charged with a criminal offense under Missouri Revised Statute § 566.034.  All in violation of Title 18, United States Code, Section 2423(a).

Case No. 15-CR-30035, Doc. 4.  The Petitioner alleges the Missouri statute referenced in the Indictment is a "crime of violence" under 18 U.S.C. § 16(b) and thus is void for vagueness pursuant to Johnson v. United States, 576 U.S. 591 (2015).  However, Johnson has no relevance to this case.

In Johnson, the issue involved the constitutionality of the "residual clause" of the Armed Career Criminal Act ("ACCA"), which provides for enhanced sentences for persons convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), if

they have previous convictions for a serious drug offense or a violent felony.  Johnson, 576 U.S. at 593-94.  The residual clause of the ACCA defined "violent felonies" under 18 U.S.C. § 924(e)(2)(B) to include any crime punishable by imprisonment for a term exceeding one year that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  In Johnson, the Court found the residual clause to be unconstitutionally vague.  See id. at 605-06.

In Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the Supreme Court considered the definition of "violent felony" in 18 U.S.C. § 16(b), which has a similar residual clause as the one considered in Johnson.  Using the same analysis as in Johnson, the Supreme Court invalidated the residual clause in § 16(b).

The Petitioner's claim is without merit.  Count 1 of the Indictment does not involve the ACCA or the federal definition of "violent felony" in § 16(b).  Count 1 is a stand-alone statute charging the Petitioner with transporting a minor interstate for purposes of illegal sexual activity.  As noted in Count 1, the statute has three distinct elements.  The reference to the Missouri Revised Statute § 566.034 in Count 1 is simply the authority that made the Petitioner's

intercourse with the minor victim while in the State of Missouri "unlawful," as is required by the elements of the federal statute. Neither the Missouri statute, nor the underlying federal statute, invoke the ACCA or the federal definition of "violent felony." Accordingly, the Petitioner was not prejudiced and counsel was not deficient for not raising this legally incorrect argument.

### (2) Claim of Lack of Venue

The Petitioner next alleges that venue was improper in the Central District of Illinois. The Government has the burden of establishing venue by a preponderance of the evidence. See United States v. Knox, 540 F.3d 708, 716 (7th Cir. 2008). Each offense charged in the Indictment requires interstate travel of a defendant for illegal sexual purposes and thus are necessarily offenses begun in one district and completed in another. "Any offense . . . begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237.

Venue was obviously proper in the Central District of Illinois. The Petitioner does not dispute, with respect to Counts 2 and 3, that when Petitioner traveled interstate for illegal sexual purposes, he

lived in the Central District of Illinois and departed from there to engage in the illegal activity.

As for Count 1, the offense actually "began" in Illinois because the Petitioner moved his camper from the Central District of Illinois to Missouri as the first step of transporting the minor victim, so that he had a place to take her other than the residence of his wife and children. The Petitioner lived in the Central District of Illinois during the planning phase for Count 1, which began in January 2015 when Petitioner and the minor victim talked about "run[ning] away and living together" and "liv[ing] in the camper." Tr. 571, 573. Once the Petitioner secured another property where he could live with the minor victim in late May or early June 2015, he moved his camper there, and left to pick up the minor victim a few days later. Tr. 689-90. Because the moving of the camper was the first step in the process of committing the offense alleged in Count 1, the Petitioner "began" his criminal conduct when he moved the camper from the Central District of Illinois to Missouri.

After the Petitioner brought the minor victim to his camper in Missouri and engaged in illegal sex acts, he transported her interstate again to his family's residence in the Central District of Illinois where,

the evidence showed, he intended to continue to commit illegal sex acts against the minor victim in the future, as he believed they were living together.  Therefore, the Petitioner's transportation of the minor victim to the Central District of Illinois was a continuation of the offense charged in Count 1.

Based on the foregoing, there was venue in this district as to each of the three counts.  Accordingly, counsel's failure to challenge venue could not possibly lead to prejudice or establish deficient performance.

(3) <u>Claim of Failure to Challenge Timeliness of Rule 5 Hearing</u>

The Petitioner next alleges that he did not have a timely Initial Appearance under Federal Rule of Criminal Procedure 5.  Doc. 5, Pt. 5, at 5-6.  The Petitioner claims prejudice on the basis that the failure of counsel to challenge the failure of the Government to promptly present him to a magistrate judge could not be sound trial strategy. <u>Id</u>. at 7.

Rule 5 states that, upon arrest, the defendant must be brought before a magistrate judge "without unnecessary delay."  The Petitioner was arrested on July 27, 2015, pursuant to a federal arrest warrant on a complaint.  <u>See</u> Case No. 15-30035, Doc. 8.  The same

day, the Petitioner appeared in front a magistrate judge in the Eastern District of Missouri for his initial appearance. <u>Id</u>. At that hearing, the Petitioner waived his right to an identity hearing, preliminary hearing, and detention hearing. <u>Id</u>. at 5. This satisfied the Government's Rule 5 obligations. To the extent that Petitioner argues there was a violation of his right to a timely preliminary hearing, he waived his right to such a hearing on July 27, 2015. While the Petitioner refers to a 10-day rule, there has not been a requirement that the preliminary hearing be scheduled within 14 days after the initial appearance since the 2009 amendment to Rule 5.1. <u>See</u> F.R.Crim.P. 5.1, Committee Notes on Rules—2009. Accordingly, there was no Government violation.

A grand jury returned the Indictment against the Petitioner on August 6, 2015, and an initial appearance was scheduled for 14 days later, on August 20, 2015. <u>See</u> 15-cr-30035, d/e 8/7/2015. Because the Petitioner was not transported to the Central District of Illinois in time, the Court rescheduled the initial appearance for August 27, 2015. <u>See</u> 15-cr-30035, Text Order 8/20/2015. Given that Petitioner was not present in the district on August 20, 2015, the brief delay was necessary. The Petitioner does not allege any

35

evidence was gathered against him during the delay, or any other grounds for potential prejudice. The ineffective assistance claim for failure to challenge timeliness fails because the Petitioner cannot establish prejudice.

### (4) Claim of Violation of Right to Speedy Trial

The Petitioner next alleges that following his arrest and release on June 6, 2015, his right to a speedy trial was violated, even though he was not charged until six weeks later. Doc. 5, Pt. 4, at 27-30. In his motion, the Petitioner claims he was subjected to "home detention" because an officer told him to stay on his property until it was time for his court appearance. Id. at 30.

The Petitioner's allegation concerning home detention and a speedy trial violation cannot cause prejudice for multiple reasons. The Petitioner provides no legal authority for how "home detention" might trigger the Government's speedy trial requirements under 18 U.S.C. § 3161. Moreover, the Petitioner's arrest on June 6, 2015, was by state, not federal authorities. Therefore, the Petitioner's "home detention" legal theory could only apply in connection with a state court prosecution. Because there was never a state court prosecution, there is no constitutional violation. Federal speedy trial

considerations were not implicated until the Petitioner was in federal custody on July 27, 2015.

In any event, the Petitioner acknowledges that even if he was "ordered" to remain in his home, he did not obey that order. In discussing his version of events regarding the FBI's visit to his home on June 30, 2015, the Petitioner states, "the Agents appeared when the petitioner was at the store, getting groceries." Doc. 5, Pt. 5, at 1. Thus, the Petitioner acknowledged that any order to remain in his home given by the police did not affect him. The Petitioner's speedy trial claim is without merit. There is no prejudice or deficient performance in connection with this issue.

(5) <u>Claims Regarding Plea-Related Discussion with Counsel</u>

The Petitioner next alleges that one of his attorneys was ineffective for failing to properly advise him during the plea negotiation process. The Petitioner claims that one of his prior counsel, Douglas Quivey, told him that the Government was offering a ten-year binding plea, which was the most favorable deal they could expect. Doc. 5, Pt. 5, at 14. The Petitioner alleges Mr. Quivey advised him that if he elected to go to trial, the guideline range would be 151 to 188 months and the maximum sentence Petitioner could receive

was 15 years.  Id.  In a subsequent pleading, the Petitioner states that his attorney did not review the sentencing guideline table with him and the potential sentences upon a finding of guilt.  Doc. 8, at 7. The Petitioner's claims on this issue are simply not credible.

In an earlier affidavit, the Petitioner states:

On or about February 19, after months of not seeing Douglas Quivey for more than 5 minutes, he arrived and was in room near Lt.'s office.  I carried a manila envelope with me to attorney visit.  He showed me a sentencing chart and letter showing I would go from Category I, 28 Points to Category one, 34 points, if I went to trial.

Doc. 5, Pt. 2, at 22.  Accordingly, the Petitioner acknowledged that his counsel did show him the applicable sentencing chart.  The Petitioner's contradictory claim in a subsequent pleading is simply not credible.

The Petitioner's assertion counsel advised him that the most he could be sentenced to was 15 years is not credible.  The Petitioner was informed that Count 1 of the Indictment carried a minimum penalty of 10 years, and a maximum term of life.  See 18 U.S.C. § 2423(a).  The other two counts had maximum penalties of 30 years. See 18 U.S.C. § 2423(b).  Given that sentences on all three offenses could be imposed consecutively, it is inconceivable that an attorney

would tell his client that the maximum penalty he faced was 15 years. Additionally, the Petitioner's affidavit provides significant detail about what he discussed with counsel when they met to discuss a plea offer but makes no mention of his attorney stating the maximum penalty was 15 years. Doc. 5, Pt. 2, at 22-23. Throughout the pleadings, the Petitioner admits that his attorney advised him that his sentencing range would likely be 151 to 188 months. Doc. 5, Pt. 5, at 15. Therefore, the Petitioner admits that his attorney advised him that he could face a sentence of more than 15 years. This admission serves to undercut his claim that counsel was ineffective for failing to properly advise him in the plea negotiation process. The Court concludes that Petitioner's claims regarding plea-related communications with counsel are not credible.

### (6) Claim of Lack of Discovery

The Petitioner next claims his attorneys were ineffective for not providing him a copy of discovery in jail. Doc. 8, at 4. This is not the basis for an ineffective assistance claim because doing what the Petitioner suggests would have been a violation of local rules. "Any pretrial discovery materials provided to the defendant . . . shall be kept in the possession and control of defense counsel or its agents at

all times." CDIL-LR 16.2(B)(4).  Pretrial discovery "shall not be given to, or left in the possession of, the defendant, except to the extent that the defendant may review the discovery in the presence of defense counsel or its agents."  CDIL-LR 16.2(B)(3).  A district court has considerable discretion in enforcing its local rules.  See Frakes v. Peoria School District No. 150, 872 F.3d 545, 549 (7th Cir. 2017). The failure to disregard the local rule at the Petitioner's request cannot constitute prejudice, nor does it constitute ineffective assistance.

(7) Claim Regarding Competency to Stand Trial

The Petitioner further claims counsel were ineffective for failing to seek a mental health examination concerning Petitioner's competency to stand trial.  A defendant is incompetent to stand trial if he has "an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings."  United States v. Garrett, 903 F.2d 1105, 1117 (7th Cir. 1990).  "Relevant factors include any evidence of irrational behavior, the defendant's behavior in court, and any medical opinions on the defendant's competency to stand trial."  Sturgeon v. Chandler, 552 F.3d 604, 612

40

(7th Cir. 2009).  Because the Petitioner has presented no such evidence, his claim fails.

As part of his § 2254 petition, the Petitioner has filed extensive pleadings wherein he methodically details everything he believes was wrong with the investigation, charges, court process, and trial. The volume and amount of detail presented in these pleadings is inconsistent with the notion that Petitioner is unable to assist in his defense or comprehend the nature of the proceeding.  In fact, the Petitioner's pleadings suggest an understanding of the allegations, the facts of the case, and the timeline of events.  The Petitioner's pleadings further suggest that he held his attorneys to unreasonably high standards before and during trial.  It appears that the failure of his attorneys to meet that standard is the basis for the Petitioner's ineffective assistance of counsel claims.  As the Supreme Court stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and raise every conceivable claim."  Engle v. Isaac, 456 U.S. 107, 134 (1982).  The Supreme Court has further recognized that effective assistance does not require litigation of every conceivable issue on appeal.  See Jones v. Barnes, 463 U.S. 745, 751-

41

52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Additionally, the magistrate judge and district judge had colloquies with the Petitioner regarding the charges, posture of the case, and various case-specific issues.  There is no record of any concern regarding the Petitioner's competency to stand trial.  Due process requires a court to hold a hearing only if a defendant produces evidence of incompetency or if the court has a reasonable doubt about competency.  See Pate v. Robinson, 383 U.S. 375, 385 (1966); Medina v. California, 505 U.S. 437, 449 (1992).  Mere assertions of incompetence do not meet this standard.  This claim fails because counsel cannot be deemed ineffective for not litigating the issue or seeking a mental health assessment on that basis.

## CONCLUSION

For the reasons stated herein, none of the Petitioner's claims related to his conviction and sentence have merit and his § 2255 motion will be denied.  The Petitioner has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different," as <u>Strickland</u> requires.  Therefore, the Petitioner is unable to establish prejudice on any claim.  This is true even if each of his ineffective assistance claims are considered aggregately.  Moreover, the Petitioner has not shown that counsel's performance was objectively unreasonable with respect to any claim.  Because the Petitioner is unable to show prejudice or deficient performance, both of which are necessary to establish ineffective assistance of counsel, the Court concludes that an evidentiary hearing under Rule 8(a) of the Rules Governing Section 2255 Proceedings is unnecessary.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability.  Upon reviewing the entire record, the Court concludes that the Petitioner has not made a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).  Accordingly, the Court will deny a certificate of appealability.

For the reasons stated herein, Petitioner Ralph David Hathaway's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [d/e 5] is DENIED.

Because the Petitioner has not made a substantial showing of the denial of a constitutional right, the Court hereby denies the Petitioner a certificate of appealability under Rule 11(a).

The Petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

The Clerk will terminate any pending motions [d/e 43, 46, 48].

The Clerk will enter Judgment and close this case.

ENTER: September 6, 2022

FOR THE COURT:

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT COURT